IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANDREW THOMAS, #M47623, <br><br> Plaintiff, <br><br> v. <br><br> E. COTTON, <br> SGT. JONES, <br> SGT. HOUSE, <br> JOHN DOE, and <br> ANTHONY WILLS, <br><br> Defendants. | Case No. 25-cv-00309-SPM |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Andrew Thomas, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Menard Correctional Center, brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a Complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b).

## THE COMPLAINT[1]

Plaintiff alleges that on January 8, 2024, he was housed in Menard Correctional Center. (Doc. 1, p. 6). While Plaintiff attended "yard," inmates Christopher Gerken and Juan Rivera, members of the gang Plaintiff formerly belonged to, confronted him. (*Id.*; Doc. 4, p. 2). The two individuals then attempted to "wire . . . Plaintiff to a spot on the yard" where he was not visible to the Watchtower. (Doc. 1, p. 6). Plaintiff ran away from the two individuals towards the Watchtower and began yelling at the Watchtower. Plaintiff alerted Correctional Officer Cotton, assigned to the Watchtower that day, of his potential danger. In response, Cotton told Plaintiff she, Cotton, could not call for an "escort" given that she had not seen Plaintiff being provoked or attacked. Plaintiff then told Cotton that his safety was in danger, and he would like to leave the yard. (*Id.*). Cotton told Plaintiff that if she had to call additional staff, he would be placed in Segregation, and then she proceeded to close the Watchtower window. (*Id.* at p. 6, 7).

Plaintiff alleges that he had to stand by the Watchtower for almost the entire yard. (Doc. 1, p. 7). Twenty minutes before the conclusion of yard, the two individuals, Gerken and Rivera, began attacking Plaintiff, punching him with closed fists. (*Id.*; Doc. 4, p. 2). The two assaulted Plaintiff for five minutes before Cotton began to

---

[1] Plaintiff appears to rely on statements made in the Complaint, Motion for TRO, and Memorandum in Support of Complaint in asserting his claims; the Court construes the allegations in all of these pleadings together. *See Otis v. Demarasse*, 886 F.3d 639, 644 (7th Cir. 2018) (The Supreme Court cautioned that any "document filed *pro se* is 'to be liberally construed,'" *pro se* litigants are granted "leniency . . . on procedural matters.") (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Lovelace v. Dall*, 820 F.2d 223, 228 (7th Cir. 1987)); *See also Williamson v. Curran*, 714 F.3d 432, 435–436 (7th Cir. 2013) ("when a plaintiff attaches to the complaint a document that qualifies as a written instrument, and her complaint references and relies upon that document in asserting her claim, the contents of that document become part of the complaint . . .") (referencing FED. R. CIV. P. 10(c)).

respond. The assault stopped when the Emergency Response Team ("ERT") responded. Plaintiff sustained bruises on his entire body and received treatment in an outside hospital for injuries, including stitches on his face. Once Plaintiff returned to Menard Correctional Center, officials placed him in "[S]egregation for defending himself." (*Id.*).

During Segregation, Intel Officer John Doe interviewed Plaintiff and stated that "his [O]ffice knew that it was a hit by [Plaintiff's] former gang." (Doc. 1, p. 7). In response, Plaintiff requested to be placed in protective custody after his release from Segregation. (*Id.*).

While in Segregation, Plaintiff also asked Sergeant House and Sergeant Jones to place him in protective custody once he was released, so that he would be separated from his attackers. (Doc. 1, p. 7, 8). Plaintiff, however, was "placed in the same cage as one of his attackers." (*Id.* at p. 7). Plaintiff alerted House of the potential danger of living with a previous attacker and member of his former gang. While in the same cell, the previous attacker threatened Plaintiff and spat at him. Plaintiff attempted to inform House regarding the threats and spitting, but House ignored Plaintiff's concerns. (*Id.*).

Upon transfer to East House, Plaintiff attempted to inform correctional officers about the ongoing threat to his safety but was ignored.[2] (Doc. 1, p. 7). Plaintiff was placed in Gallery Ten, the same gallery as his attackers. After a couple days, the correctional officers responded to Plaintiff's request to be placed in protective custody. (*Id.*).

---

[2] The Complaint does not make clear who these correctional officers are. (Doc. 1, p. 7).

Plaintiff also alleges that Warden Anthony Wills knew of Plaintiff's potential danger. (Doc. 1, p. 8). Plaintiff previously notified the Governor's Office of his safety concerns after another inmate assaulted him at his previous place of incarceration. Once transferred to Menard Correctional Center, Plaintiff wrote letters notifying the Governor's Office of his new safety concerns at Menard Correctional Center. Plaintiff alleges that the Governor's Office forwards all correspondence from inmates to IDOC. (*Id.*).

## DISCUSSION

Based on the allegations in the Complaint, the Court finds it convenient to designate the following Counts:

**Count 1:** Eighth Amendment claim against Cotton for failing to protect Plaintiff on January 8, 2024, from attack by other inmates in the yard.

**Count 2:** Eighth Amendment claim against Jones, House, John Doe, and Wills for failing to protect Plaintiff from the threat of attack by other inmates on or around January 8, 2024.

**Count 3:** Eighth Amendment claim against Cotton, House, John Doe, and Wills for failure to intervene on or around January 8, 2024.

**Count 4:** Fourteenth Amendment claim against Cotton, Jones, House, John Doe, and Wills for denial of substantive due process on or around January 8, 2024.

The parties and the Court will use these designations in all future pleadings and Orders, unless otherwise directed by a judicial officer of this Court. **Any other claim mentioned in the Complaint but not addressed in this Order should be**

**considered dismissed without prejudice as inadequately pled under the *Twombly*[3] pleading standard.**

### Count 1

At this stage, Plaintiff states a viable claim for failure to protect against Cotton in Count 1. *Moore v. W. Ill. Corr. Ctr.*, 89 F.4th 582, 590 (7th Cir. 2023) (citing *Wilson v. Seiter*, 501 U.S. 294 (1991)).

### Count 2

Count 2 will be dismissed in part. Plaintiff states a viable claim for failure to protect against House in Count 2. *Brown v. Budz*, 398 F.3d 904 (7th Cir. 2005) (citing *Billman v. Ind. Dept. of Corr.*, 56 F.3d 785 (7th Cir. 1995)); *Helling v. McKinney*, 509 U.S. 25 (1993); *Butera v. Cottey*, 285 F.3d 601 (7th Cir. 2002); *Weiss v. Cooley*, 230 F.3d 1027 (7th Cir. 2000).

Plaintiff's claims against Jones and John Doe will be dismissed. For a failure to protect claim to proceed, a plaintiff must plead "that the defendant was subjectively aware of and disregarded a 'substantial risk of serious harm' to the inmate." *Elm v. Locked and Loaded Transport Agency*, No. 19-C-1890, 2020 WL 291807, at *2 (E.D. Wis. 2020) (citing *Farmer v. Brennan*, 511 U.S. 825, 858 (1994)). "A substantial risk of serious harm is one in which the risk is so great that it is almost certain to materialize if nothing is done." *Wilson v. Ryker*, 451 Fed. Appx. 588, 589 (7th Cir. 2011). At the time that Plaintiff made the request to Jones and John Doe to be placed in protective custody, he had not yet been placed in his cell with one of his attackers

---

[3] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

or moved to East Cell House. There are no allegations that Jones and John Doe were aware of or otherwise involved in Plaintiff's subsequent placement in the cell with or near his attackers. (Doc. 1, p. 7, 8). Thus, there are no facts alleged in the Complaint from which the Court can plausibly infer that Jones and John Doe disregarded an excessive risk to Plaintiff's safety.

Plaintiff's claim against Wills will be dismissed. A defendant "is personally responsible 'if the conduct causing the constitutional deprivation occurs at his direction or with his knowledge and consent.'" *Wilson v. Warren Cnty. Ill.*, 830 F.3d 464, 469 (7th Cir. 2016) (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)); *Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015). While Plaintiff does allege that his letters describing his safety concerns were forwarded from the Governor's Office to the warden's office at Menard Correctional Center, the content of these letters as well as when they were sent is unclear. (Doc. 1, p. 7). Thus, the Complaint does not alleged facts supporting the inference that there was a "substantial risk of serious harm" to Plaintiff when Wills received the letters, and that Wills "was subjectively aware of" said risk and failed to act. *Elm v. Locked and Loaded Transport Agency*, No. 19-C-1890, 2020 WL 291807, at *2 (E.D. Wis. 2020) (citing *Farmer v. Brennan*, 511 U.S. 825, 858 (1994)).

### Count 3

Count 3 will be dismissed. Plaintiff alleges that Cotton, House, John Doe, and Wills violated his Eighth Amendment rights by failing to intervene. First, Plaintiff claims the state actors failed to intervene during and after his fellow inmates' threats and attacks. (Doc. 1, pp. 6–8). To succeed on such a claim, Plaintiff must demonstrate

that Defendants (1) "knew that a constitutional violation was committed; and (2) had a realistic opportunity to prevent it." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). However, a plaintiff can only bring a failure to intervene claim "when another *state actor* is violating the plaintiff's rights" or to "prevent a fellow officer from violating a plaintiff's rights." *Young v. Dart*, No. 17-cv-1914, 2021 WL 3633927, ¶ 37 (7th Cir. Aug. 17, 2021) (emphasis added); *Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000). Because Plaintiff alleges misconduct related to the *inmates'* attack and threats, the Court dismisses the Count.

## Count 4

Count 4 will be dismissed. Plaintiff alleges that Defendants violated his Fourteenth Amendment rights when acting with deliberate indifference towards the other inmates' threats and attacks. (Doc. 5, p. 1); *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Although the prison officials may have violated the Plaintiff's substantive due process rights when acting with deliberate indifference to the threats and attacks, such claims only proceed under the Fourteenth Amendment when no other constitutional provision specifically applies. *Farmer*, 511 U.S. at 837; *Childress v. Walker*, 787 F.3d 433, 438 (7th Cir. 2015).

Here, the Eighth Amendment, which explicitly governs claims involving cruel and unusual punishment, properly addresses the alleged misconduct: the failure to protect Plaintiff from other inmates. The Supreme Court and Seventh Circuit have made clear that plaintiffs should "resort to the substantive guarantees of the Due Process Clause for relief only when there is not 'a particular Amendment [that] provides an explicit textual source of constitutional protection against a particular

sort of government behavior.'" *Walker*, 787 F.3d at 438 (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998)). Because the Eighth Amendment Claim addresses the circumstances described in the Complaint, Plaintiff's Fourteenth Amendment substantive due process claim is duplicative and is therefore dismissed.

## DISPOSITION

For the reasons stated above, the Complaint survives preliminary review pursuant to Section 1915A. **COUNT 1** will proceed against Cotton. **COUNT 2** will proceed against House and is **DISMISSED without prejudice against** John Doe, Jones, and Wills. **COUNT 3** and **COUNT 4** are **DISMISSED without prejudice.** Because there are no surviving claims against John Doe, Jones, and Wills the Clerk of Court shall **TERMINATE** them as parties on the docket.

The Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The Clerk of Court shall prepare for Defendants Cotton and House the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is directed to mail these forms, a copy of the Complaint, and this Memorandum and Order to the Defendants' places of employment. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C § 1997e(g). **Pursuant to Administrative Order No. 244, the defendants only need to respond to the issues stated in this Merit Review Order**.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this Order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  July 8, 2025**

*s/Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**

## NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless otherwise directed by the Court.